**Nathaniel J. JACOBS, Appellant,**

v.

**WARDEN, MARYLAND PENITEN-
TIARY, Appellee.**

**No. 9564.**

United States Court of Appeals
Fourth Circuit.

Argued April 6, 1965.

Decided Oct. 7, 1966.

John H. Ditto, Jr., Baltimore, Md. (Court-assigned counsel), for appellant.

R. Randolph Victor, Asst. Atty. Gen. of Maryland (Thomas B. Finan, Atty. Gen. of Maryland, on the brief), for appellee.

Before HAYNSWORTH, Chief Judge, and BRYAN and J. SPENCER BELL, Circuit Judges.

HAYNSWORTH, Chief Judge.

Convicted on a plea of guilty to a charge of armed robbery in a state court, this Maryland prisoner seeks habeas corpus relief upon the ground that his plea was involuntary. The contention depends in large part upon a finding of involun-

tariness in the confession of a co-defendant which supplied the cause for the arrest, without a warrant, of this appellant, which in turn, it is said, led to his almost spontaneous confession. We affirm the denial of relief.

Jacobs, an employee of a department store, had been filching clothing. Allegedly, he expanded his operation by masterminding an armed robbery. The store was robbed by three men. When one of them, Kelly, was arrested, he signed a confession which implicated Jacobs as the ringleader. Armed with this information, police officers went to the store and arrested Jacobs. In the presence of the store manager, he did not deny the charge, and, within twenty-five minutes of his arrival at the police station, he admitted his guilt. A few minutes later, he signed a written confession. Later, all participants initialed a joint confession.

Kelly had been arrested without a warrant on the basis of information received from two informants. The police had not recorded the information they had received and, at the time of the hearing, could not identify the informants beyond general references to their sex. The officers could not vouch for the reliability of those informants.

On that account, the District Court held that there was no probable cause for Kelly's arrest and that his subsequent confession was the involuntary product of the illegal arrest, though otherwise uncoerced.[1]

Jacobs contends that, since Kelly's confession has been held involuntary as the technical product of his illegal arrest, it could not furnish probable cause for a belief that Jacobs was a participant in the crime which the officer knew had been committed. He concludes that his arrest must also have been unlawful and his confession the product of the unlawful arrest.

The contention draws the thread too fine. The connection between Kelly's

1. The District Court treated Kelly's and Jacobs' cases in one opinion. Kelly v. Warden, D.C., Md., 230 F.Supp. 551.

illegal arrest and his confession is sufficiently close that the latter may be said to be dependent upon the former. The connection between Kelly's illegal arrest and Jacobs' confession is far more attenuated. The fruit-of-the-poisonous-tree doctrine need not be extended to its seedlings.[2]

■■ The District Court found, with abundant justification that Kelly's confession was truthful and trustworthy. Its invalidation as a basis for Kelly's conviction, because of the technical defect in Kelly's arrest, was not found to have infected its apparent reliability. At the time the policemen moved to effect the arrest of Jacobs, they had every reason to believe that Kelly's confession in its implication of Jacobs was reliable information. Its subsequent suppression as support for Kelly's conviction because of uncertainty of the sources of information which led to Kelly's arrest cannot gainsay its reliability, apparent at the time to the officers, which all subsequent events have confirmed. An arrest of one of multiple offenders upon improbable cause, or upon cause which years after the event cannot be documented, may invoke rules of exclusion for the protection of the victim of the illegal arrest, but it does not deprive the victim's statement of the inherent and apparent reliability it convincingly and undeniably bore then and now.[3]

There is no greater merit in the alternative contention that the confession was the tainted product of Kelly's.

■ The victim of an unlawful seizure may be able to object successfully to the use of his confession, when the confession is the direct result of confrontation with the fruits of the seizure.[4] Similarly, the victim of an unlawful search cannot be compelled to produce evidence upon process dependent upon information obtained in the course of the search.[5]

In some instances, such a rule may be the only effective sanction against an unlawful search and seizure, and a refusal to apply it may deprive the prohibition of its substance.

■ That rule, however, has been applied only to the protection of the victim of the search from its immediate, if collateral, consequences. Its purpose is to restore the victim to the position he would have been in had his right to be secure from an unlawful search been observed. It has never been extended to cloak strangers to the unlawful search with absolute or conditional immunities.

■ The District Court, here, applied a similar rule to redress the wrong done Kelly when he was arrested without probable cause. Refusal to permit use of Kelly's confession against him, however, is an entirely sufficient recompense. The protection of Kelly's right does not require that others, who have suffered no deprivation of their rights, be made the beneficiaries of the exclusionary rule.

■ Again, Kelly's confession had all of the hallmarks of trustworthiness. If now it must be held unusable against Kelly because the police, who kept no records to prod their memories after the lapse of time, are now unable to identify their informants and justify Kelly's arrest, there was no unfairness of constitutional proportion in confronting Jacobs with the information Kelly had furnished the police.

■ Jacobs does not show that his own confession was involuntary by establishing its responsiveness to word of Kelly's.

In the District Court, on the habeas hearing, Jacobs claimed other coercive practices. The District Court did not believe his testimony. It found that he was not refused permission to telephone a lawyer. He was not denied access to a

**2.** See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

**3.** Cf. Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726.

**4.** Fahy v. State of Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171.

**5.** Silverthorne Lumber Co., Inc. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L. Ed. 319.

telephone. He did call his wife. No pressure was brought upon him. A rather equivocal admission of guilt was made upon his arrest in the store; a full confession had been made and completed within half an hour after his arrival at the police station.

 The District Court's finding that the confession was voluntary is abundantly supported by the record. This 1961 case is not subject to Escobedo's [6] or Miranda's [7] standards.[8]

Affirmed.

6. Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.

7. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 694.

8. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882.